**SO ORDERED.**

**DONE and SIGNED March 13, 2019.**



_____
**JOHN S. HODGE**
**UNITED STATES BANKRUPTCY JUDGE**

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case Number: 19-10027 |
| | § | |
| Mark Wayne Grigsby | § | Chapter 13 |
| Darita Lashon Grigsby | § | |
| | § | |
| Debtors | § | |

## <u>Memorandum of Decision</u>

Before the Court are three motions: (1) a Motion for Conversion of Case to Case under Chapter 7 or to Dismiss Case with Sanction Under 11 U.S.C. § 105(a) (Doc. 26) filed by party-in-interest and creditor Lake Pointe Place Homeowners Association, Inc. ("**Lake Pointe**") (the "**Lake Pointe Motion**"); (2) a Motion to Dismiss Case with Sanctions, or, in the Alternative Motion to Convert the Case to a Chapter 7 (Doc. 32) filed by secured creditor Barksdale Federal Credit Union ("**BFCU**") (the "**BFCU**

**Motion**"); and (3) a Motion to Dismiss Case (Doc. 19) filed by joint debtors Mark Wayne Grigsby and Darita Lashon Grigsby (collectively "**Debtors**") (the **"Debtors' Motion"**).

The Lake Pointe Motion, the BFCU Motion, and the Debtors' Motion were the subject of a combined trial on February 27, 2019, wherein the Court heard arguments of counsel and testimony in support of Lake Pointe's and BFCU's assertion that Debtors filed this case in bad faith and for improper purposes. Debtors did not appear to either advance their own motion or to defend themselves against the bad faith and sanctionable conduct allegations made against them by Lake Pointe and BFCU.

Following trial, the Court took under advisement the Lake Pointe Motion, the BFCU Motion, and the Debtors' Motion. For the reasons set out more fully below, the Court **GRANTS** the Lake Pointe Motion and the BFCU Motion insofar as the motions seek conversion of this case to one under Chapter 7 of the Bankruptcy Code, and **ORDERS** that this case be **CONVERTED** to one under Chapter 7 of the Bankruptcy Code.

The Court **DENIES** the Debtors' Motion.

## I. Jurisdiction, Venue, Core Status and Authority to Enter Final Order

This Court has jurisdiction over the motions pursuant to 28 U.S.C. § 1334 and by virtue of the reference by the district court pursuant to 28 U.S.C. § 157(a) and LR 83.4.1. Venue is proper pursuant to 28 U.S.C. § 1408. All claims presented to this Court are "core" pursuant to 28 U.S.C. § 157 (b)(2)(A) and (O).

This Court has an independent duty to evaluate whether it has the

constitutional authority to enter a final order. The Supreme Court's ruling in *Stern v. Marshall,* 564 U.S. 462 (2011), sets forth certain limitations on the constitutional authority of bankruptcy courts to enter final orders. *BP RE, L.P. v. RML Waxahachie Dodge, L.L.C.,* 735 F.3d 279, 286 (5th Cir. 2013) (" 'the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process.' ") (quoting *Stern,* 564 U.S. at 499). Thus, under *Stern,* in addition to determining whether each claim is core or non-core, this Court must also determine whether the underlying issue "stems from the bankruptcy itself or it would necessarily be resolved in the claims allowance process." *BP RE,* 735 F.3d at 286. Absent both statutory and constitutional authority, this Court may not enter a final order, and instead must issue proposed findings of fact and conclusions of law to be considered by the district court.

The matters at bar require this Court to issue rulings on a motion to convert or dismiss a chapter 13 bankruptcy case, which solely concerns federal bankruptcy law. *See* 11 U.S.C. § 1307(c); see also 11 U.S.C. §105(a). Therefore, there are no *Stern* issues in this case. This Court holds that it has the constitutional and statutory authority to enter a final order or judgment with respect to the matters at bar. See *In re Wilcox*, 539 B.R. 137, 146 (Bankr. S.D. Tex. 2015) (noting that the court has constitutional authority to enter a final order when the dispute is based upon an express provision of the Code and no state law is involved).

## II. <u>Findings of Fact</u>

This Court makes the following findings of fact pursuant to Rule 7052 of the

Federal Rules of Bankruptcy Procedure, which incorporates Rule 52 of the Federal Rules of Civil Procedure. To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such.

The facts, in pertinent part, are as follows:

1.     On January 8, 2019, Debtors commenced this case by filing a voluntary petition pursuant to Chapter 13 of the Bankruptcy Code (Doc. 1). R. Scott Bowie was their counsel of record. (Doc. 1).

2.     On January 18, 2019, Debtors filed their bankruptcy schedules (Doc. 7), Statement of Financial Affairs (Doc. 8), Statement of Current Monthly Income (Doc. 9), and Chapter 13 Plan (Doc. 10).

3.     Debtors signed their schedules and statement of financial affairs under penalty of perjury. (Doc. 7, Page 50; Doc. 8, Page 7). Darita Lashon Grigsby signed on her own behalf and on behalf of Mark Wayne Grigsby "as power of attorney." *Id.*

4.     By letter dated January 25, 2019, Lake Pointe's lawyer, Curtis R. Shelton, advised Mr. Bowie of his client's intention to schedule an examination of Debtors pursuant to Fed. R. Bankr. P. 2004. (Lake Pointe Ex. 20).

5.     Shortly thereafter, Debtors filed, *pro se*, a "Motion to Dismissed" [*sic*] stating their desire "to dismissed [*sic*] our Chapter 13 bankruptcy case." (Doc. 19).

6.     On February 4, 2019, Mr. Bowie filed a Motion to Withdraw as Debtors' attorney of record. (Doc. 18). On the same day, the Court entered an order granting Mr. Bowie's motion. (Doc. 24).

7.     In response to Question 1 of Schedule A/B filed pursuant to § 521(a)(1)

and Bankruptcy Rule 1007(b), each Debtor claims to own an interest[1] in the immovable property described as follows:

> Lot 14, Lake Pointe Place, a subdivision in the City of Shreveport, Caddo Parish, Louisiana, as per plat recorded in Book 2150, page 411 of the Conveyance Records of Caddo Parish, Louisiana (hereinafter "Lot 14").

8.　　BFCU is the holder of a claim secured by a first mortgage on Lot 14.

9.　　According to its proof of claim (Claim No. 13), BFCU is owed $490,482.97.

10.　　Lake Pointe is a creditor and party-in-interest[2] that is owed funds secured by homeowners' association privileges on Lot 14, for which Lake Pointe has recorded notices of its liens and privileges.[3]

11.　　Before Debtors commenced this bankruptcy case, BFCU instituted foreclosure proceedings against Lot 14 through the filing of a Petition for Executory Process Without Benefit of Appraisal, Suit #606,780, First Judicial District Court, Caddo Parish, Louisiana.

12.　　On the eve of the Sheriff's sale, set to commence on January 9, 2019,

---

[1] Prior to the commencement of this case, Debtor Darita Lashon Grigbsy executed a donation *inter vivos* of her interest in Lot 14 to debtor Mark Wayne Grigbsy. (Lake Pointe Ex. 1). The Court, however, expresses no opinion regarding the effect of this inter-spousal donation *inter vivos* which is governed by Louisiana Civil Code arts. 1744, 1747 and 2343.1 and La. R.S. 9:2351.

[2] Despite the fact that Lake Pointe was not listed in any of the Debtor's schedules and was not included in the mailing matrix, Lake Pointe is a creditor and a party-in-interest because it is owed funds from the debtor. As a creditor and party-in-interest, Lake Pointe may appear and be heard on any issue in a case under the Bankruptcy Code.

[3] La. R.S. 9:1145 to 9:1148 recognize a privilege on behalf of homeowners' associations against the lot and improvements of a homeowner who fails to pay charges, expenses, or dues.

Debtors filed the present bankruptcy case.

13.     Regarding the treatment of BFCU's claim, the Chapter 13 Plan provides that:

> The Debtors contend that Barksdale Federal Credit Union violated contract, violated agreement, violated Fair Debt Reporting Act and violated regulations of the Department of Housing and Urban Development (referred to as HUD) regarding the handling of construction loan, mortgage financing of construction loans, and reporting and disclosing information to third parties. HUD has investigated the facts and is near action on this matter. Until resolution of the complaints lodged with HUD, the Debtors' plan authorizes the Chapter 13 Trustee to disburse the sum of $300 per month to the Barksdale Federal Credit Union, or a sum determined by the Bankruptcy Court.

The Plan, however, failed to mention that all of these allegations against BFCU were previously litigated in federal court and were dismissed with prejudice[4] by United States District Judge Terry A. Doughty. See *Mark and Darita Grigsby vs. Barksdale Federal Credit Union, et al.*, Case No. 18-cv-00537, United States District Court, Western District of Louisiana (the "**Federal Court Action**") (Lake Pointe Ex. 6).[5]

14.     Not only did Debtors fail to disclose the judgment rendered in the Federal Court Action, but they also failed to list their lawsuit in response to Question 9 of their Statement of Financial Affairs (Doc. 8, p. 3) which asks: "[w]ithin 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or

---

[4] The doctrine of *res judicata* bars re-litigation of Debtors' allegations against BFCU in this or any other forum.

[5] This lawsuit was pending until December 6, 2018, about one month before Debtors filed this bankruptcy case.

administrative proceeding? List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes."

15.    After the commencement of this case, multiple parties filed proofs of claim[6] indicating that they hold security interests in Debtors' movable (personal) property, including the following:

a.    **Tower Loan Collateral**.

Z-RO TURN LAWN MOWER, WEEDEATER, BLOWER, EDGER, 2ND TV 55", 3RD TV 55" FS, 4TH TV 55" FS, 5TH TV 55" FS, BOSS SURROUND SOUND SYSTEM, APPLE DESKTOP, PRINTER, 2016 FISHING BOAT.[7]

Weight Bench and Weights, Air Compressor, Chainsaw, Honda Push Mower, Honda Weed Eater, Electric Blower, Generator, 2nd Flatscreen TV 55" Samsung, 3rd Flatscreen TV 55" Samsung, Blu Ray, Apple Laptop, Ipad, Toolbox, Pool Table, Commercial Grade Grill, 4th 36" Flat TV Samsung, 5th 36" Flat TV Samsung, Projector, Pool Table, Laptop Computer, 1 Printer, Sanyo Surround System.[8]

b.    **Republic Finance Collateral**.

- 2014 Honda push mower (22" deck), 2013 Honda gas weedeater, 2013 Black & Decker Cordless Drill, 2013 Black & Decker chain saw, 2016 Honda generator, 2014 Mac Apple Laptop computer, 2017 Apple Watch,

---

[6] Pursuant to § 502(a), a proof of claim is deemed allowed unless a party in interest objects. Here, no party in interest objected to any proof of claim filed in this case. Pursuant to Bankruptcy Rule 3001(f), a proof of claim executed and filed in accordance with the Federal Bankruptcy Rules shall constitute prima facie evidence of the validity and the amount of the claim. Here, the Court finds that the proofs of claim at issue were filed in accordance with the Bankruptcy Rules and therefore constitute prima facie evidence of the validity and the amount of the claims.

[7] See, Claim 7 and Lake Pointe Ex. 9 and 10, attaching copies of a promissory note and security agreement dated October 20, 2017 and UCC-1 Financing Statement on November 2, 2017, in the records of Caddo Parish, Louisiana, as Instrument No. 09-1347131.

[8] See, Claim 6 and Lake Pointe Ex. 13, attaching copy of UCC-1 Financing Statement on October 26, 2017, in the records of Caddo Parish, Louisiana, as Instrument No. 09-1346603.

2013 14K Gold Chain Necklace, 2016 Gold Diamond Bracelet, 2013 55"
Phillips F/S TV, 2017 55" Phillips F/S TV, 2017 Bose Theater System
Full Set.[9]

- 2014 Honda Push Lawn Mower 22" Deck, 2013 14k Gold Chain Necklace
  Antique China Hutch (70s), 6 Place Setting Antique China (60s), 2013
  Black and Decker Chain Saw, 2013 Black and Decker Cordless Drill,
  2013 Honda Gas Weedeater, 2014 Apple Mac Laptop Computer, 2014
  Apple i-Phone 6, 2013 55" Phillips Flatscreen TV, 2016 Utility Trailer
  10 x 18 Big Tex, Honda Generator[10]

- 2014 Honda Push Lawn Mower, 2012 Kentmore Chest Deep Freezer,
  2013 14k Gold Chain Necklace, Antique China Hutch (70s), 6 Place
  Setting Antique China (60s), 2013 Black and Decker Chain Saw, 2013
  Black and Decker Cordless Drill, 2013 Honda Weed Eater, 2014 Apple
  Mac Laptop Computer, 2014 Apple i-Phone 6, 2013 55" Phillips
  Flatscreen Tv, 2016 Honda Generator[11]

- 2014 Honda Push Lawn Mower, 2012 Kentmore Chest Deep Freezer,
  2013 14k Gold Chain Necklace, Antique China Hutch (70s), 6 place
  setting Antique China (60s), 2013 Black and Decker Chain Saw, 2013
  Black and Decker Cordless Drill, 2013 Honda Weed Eater, 2014 Apple
  Mac Laptop Computer, 2014 Apple i-Phone 6, 2014 Apple i-Phone 6, (3)
  2013 55" Phillips Flatscreen Tv's[12]

16.     After the commencement of this case, Debtors filed their schedules of

assets as required by § 521(a)(1) of the Bankruptcy Code and Bankruptcy Rule

---

[9] See, Claim 8, page 9 and Lake Pointe Ex. 14, attaching copies of a promissory note and
security agreement dated October 20, 2017 and UCC-1 Financing Statement on October 27,
2017, in the records of Caddo Parish, Louisiana, as Instrument No. 09-1346538.

[10] See, Claim 8, page 10, and Lake Pointe Ex. 14, attaching a copy of UCC-1 Financing
Statement on April 7, 2017, in the records of Caddo Parish, Louisiana, as Instrument No. 09-
1326427.

[11] See, Claim 8, page 11, and Lake Pointe Ex. 14, attaching a copy of UCC-1 Financing
Statement on January 6, 2017, in the records of Caddo Parish, Louisiana, as Instrument No.
09-1318587.

[12] See, Claim 8, page 12, and Lake Pointe Ex. 14, attaching a copy of UCC-1 Financing
Statement on May 6, 2015, in the records of Caddo Parish, Louisiana, as Instrument No. 09-
1326427.

1007(b). (Doc. 7). Debtors' bankruptcy schedules, however, did not list all of the collateral held by Tower Loan or Republic Finance, including the following:

a.  **Undisclosed Boat**.  Question 9 of Schedule A/B (Doc. 7, p. 5) asks if Debtors own any boats, trailers, motors, watercraft, or fishing vessels. Debtors responded to this question by checking the box "no."  Their answer is contradicted by the Tower Loan promissory note and security agreement dated October 20, 2017 which clearly lists a 2016 fishing boat. (Lake Pointe Ex. 9).

b.  **Undisclosed Electronic Devices**.  Question 7 of Schedule A/B asks if Debtors own any televisions, radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games.  Here, Debtors checked the box "yes," but listed only two (2) televisions, a laptop, and two (2) cell phones. (Doc. 7, page 5).  The evidence, however, establishes that Debtors own many more electronic devices which simply were not disclosed, including three (3) additional television sets and a 2017 Bose home theater system. See, Lake Pointe, Ex. 10 (listing 5 televisions), Lake Pointe Ex. 14 (UCC-1 financing statement dated October 26, 2017, listing a 2017 Bose home theater system).

c.  **Undisclosed Jewelry**.  Question 12 of Schedule A/B asks if Debtors own any jewelry, including everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, or silver.  Here, Debtors answered "yes" (Doc. 7, p.7), but listed only wedding rings. The documentation attached to Republic Finance's proof of claim, however, shows Debtors own an Apple

Watch, a14 karat gold chain necklace from 2013, and a 2016 gold diamond bracelet. (Lake Pointe Ex. 13). Debtors failed to list any of these items.

d. **Undisclosed Pool Table**. Question 9 of Schedule A/B asks if Debtors own any sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments. Here, Debtors answered "no" (Doc. 7, p.5), even though they granted a security interest in a pool table to Tower Loan. (Lake Pointe Ex. 14).

e. **Undisclosed Stocks and LLC membership interests.** Questions 18 and 19 of Schedule A/B ask whether Debtors own any bond funds, investment accounts with brokerage firms, money market accounts or non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture. In response, Debtors checked "no." (Doc. 7, p. 6). This is contradicted by the deductions from Mr. Grigsby's income shown on Schedule J. (Lake Pointe Ex. 8). The deductions from Mr. Grigsby's income include a deduction of $407.14 for an Employee Stock Purchase Program with his employer, Kansas City Southern Railroad. Debtors' "no" response to Question 19 of Schedule A/B is further contradicted by evidence adduced at trial showing that Debtor Darita Lashon Grigsby has a membership interest in United Enterprises Investments, L.L.C. (Lake Pointe Ex. 21, 22).

17. Debtors listed on Schedule J that they pay real estate taxes of $175.00 per month, which would be $2,100.00 per year. (Lake Pointe Ex. 17). Evidence produced at trial showed that, in fact, it was BFCU, not Debtors, who paid in full

Debtors' outstanding real estate taxes and insurance for 2018. (BFCU Ex. 1). Specifically, BFCU produced copies of cancelled checks showing that, on December 27, 2018, BFCU: (i) advanced $7,662.59 to pay the 2018 Caddo Parish taxes, and (ii) advanced $2,002.38 to pay the 2018 City of Shreveport taxes. (BFCU Ex. 1).

18.     Debtors also listed on Schedule J that they pay homeowners' association or condominium dues of $100.00 per month, or $1,200.00 per year. (Lake Pointe Ex. 17). Evidence adduced at trial proved this to be yet another misrepresentation by Debtors. Lake Pointe produced a statement for the 2019 homeowners' association dues owed on Debtors' home in the amount of $1,750.00. (Lake Pointe Ex. 18).

19.     For the reasons set forth herein, the Court finds that Debtors: (i) failed to list creditors and parties-in-interest; (ii) omitted several assets with material value from their schedules; (iii) misstated their expenses; and (iv) failed to disclose information about prior federal court litigation to which they were parties in the United States District Court for the Western District of Louisiana.

## III.   <u>Conclusions of Law and Analysis</u>

This Court makes the following conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such.[13]

### A. Debtors' Bad Faith is Cause for Conversion of this Case to One Under Chapter 7 of the Bankruptcy Code

BFCU and Lake Pointe assert that, because of Debtors' manifest bad faith,

---

[13]   Unless otherwise indicated, all citations to statutory sections are to the Bankruptcy Reform Act of 1978 (the "Bankruptcy Code" or "Code"), as amended, 11 U.S.C. § 101 *et seq.*

their Chapter 13 case should be either dismissed or converted to a Chapter 7.  Under § 1307, upon the request of a party in interest, the court may convert a chapter 13 case to chapter 7 "for cause."

Section 1307[14] delineates a non-exclusive list of circumstances which constitute cause. Lack of good faith constitutes "cause" for purposes of § 1307(c). See, *e.g., Toles v. Powers*, 1999 WL 1261453 at *3 (N.D. Tex. 1999) ("Several courts have found that a lack of good faith is sufficient cause for a bankruptcy court to take action under section 1307.") (citations omitted).  In the Fifth Circuit, to determine whether a Debtor acted in good faith, courts employ a "totality of the circumstances" analysis with the determination made on a case-by-case basis. *Matter of T–H New Orleans L.P.,* 116 F.3d 790 (5th Cir.1997) ("The requirement of good faith must be viewed in light of the totality of the circumstances surrounding establishment of a Chapter 11 plan...").

---

[14]  Section 1307, which governs conversion or dismissal of chapter 13 cases, provides that:

(a)　　The debtor may convert a case under this chapter to a case under chapter 7 of this title at any time. Any waiver of the right to convert under this subsection is unenforceable.

(b)　　On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.

(c)　　*Except as provided in subsection (e) of this section, on request of a party in interest or the United States Trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause ...*

　　. . .

11 U.S.C. § 1307 (emphasis added).

"The bad faith determination focuses on the totality of the circumstances, specifically: (1) whether the debtor has stated his debts and expenses accurately; (2) whether he has made any fraudulent representation to mislead the bankruptcy court; or (3) whether he has unfairly manipulated the bankruptcy code." *In re Molitor*, 76 F.3d 218, 220–21 (8th Cir. 1996); *In re Nassar*, 216 B.R. 606, 608 (Bankr. S.D. Tex. 1998) (same); *In re Gier*, 986 F.2d 1326, 1329 (10th Cir. 1993) ("We join the Seventh Circuit and conclude that in determining whether a Chapter 13 petition has been filed in bad faith under § 1307(c), the bankruptcy court must consider the 'totality of the circumstances.' This approach is as appropriate for a § 1307(c) inquiry as it is for a § 1325(a)(3) inquiry because in each case it best assists the bankruptcy court's determination whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the Chapter]." (internal quotations and citations omitted).

At trial, Lake Pointe and BFCU bore the burden of proving, by a preponderance of the evidence, that Debtors filed this case in bad faith such that it should now be converted to a Chapter 7 case in order to serve the best interests of creditors to the estate. See *In re Barrows*, 399 B.R. 506 (Bankr. D. Minn. 2009), *aff'd,* 408 B.R. 239 (B.A.P. 8th Cir. 2009) (holding that the moving party bears the burden of establishing "bad faith," of a kind sufficient to prevent debtors from amending their schedules, "and must do so by a preponderance of the evidence"); see also, *In re Werts*, 410 B.R. 677 (Bankr. D. Kan. 2009) (holding that "although a debtor bears the burden of proving that a Chapter 13 plan was filed in good faith, the burden of showing that a

case was filed in bad faith so as to require conversion or dismissal falls on the party seeking such conversion or dismissal).

Lake Pointe and BFCU provided the Court with evidence sufficient to show, by a preponderance of the evidence, that: (1) Debtors attempted to mislead this Court and their creditors by proposing a plan that hinged upon the success of already-dismissed claims; (2) Debtors intentionally did not list creditor and party-in-interest Lake Pointe in its schedules; (3) Debtors intentionally failed to include potentially valuable assets on their schedules; and (4) Debtors intentionally misstated their expenses.

Additionally, the Court views the timing of Debtors' bankruptcy filing as suspicious at best, and deceitful at worst. As mentioned above, Debtors filed this case one day before a lawfully scheduled Sheriff's sale,[15] which had already been set and re-set numerous times before.[16] The Court finds that the timing of Debtors filing for bankruptcy relief is further evidence that theirs was a bad-faith filing. Debtors' lack of candor[17] also is evident from their Bankruptcy Petition, Schedules, and Statement of Financial Affairs. These documents are replete with false statements, misleading information, and omissions of material facts. See*, e.g., In re Leavitt*, 171 F.3d 1219

---

[15] Plans which have as their sole purpose the forstalling of mortgage foreclosures on a debtor's residential real property have been held to have been filed in bad faith and not confirmable. *Matter of Stein*, 36 B.R. 521, (Bktcy. M.D. FL 1983).

[16] Counsel for BFCU noted that the Sheriff's sale of the Grigsby property was originally scheduled in early 2018, but had to be re-scheduled on multiple occasions due to Debtors' actions.

[17] "Candor, accuracy and integrity are required of a debtor in bankruptcy. *In re Bennett*, 126 B.R. 869, 875 (Bankr. N.D. Tex. 1991).

(9th Cir. 1999) (finding debtor's failure to fully disclose assets and correct omissions indication of bad faith).

Debtors' disregard for their obligations under chapter 13 bankruptcy provide an independent basis to conclude that this case was filed in bad faith and should be converted. *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 373–74, (2007); see also *In re Henson*, 289 B.R. 741, 752 (Bankr. N.D. Cal. 2003) (holding that "it is not necessary to find that Debtor filed bankruptcy in bad faith in order to conclude that cause exists to remove this case from Chapter 13, because Debtor has shown that he is not capable of performing as a Chapter 13 Debtor. Debtor has not provided reliable information about his financial condition, he will not make himself available to do so in future ... Cause therefore exists for concluding that this bankruptcy case cannot remain in Chapter 13"); see also *In re Stoller*, 351 B.R. 605 (Bankr. N.D. Ill. 2006) ("[i]n deciding whether Chapter 13 petition was filed in bad faith, so as to provide 'cause' for order converting case, bankruptcy court considers both objective evidence that a petition promotes a fundamentally unfair result and subjective evidence that debtor filed petition for a fundamentally unfair purpose not in line with spirit of the Bankruptcy Code"); see also *In re Goodvin*, 548 B.R. 806 (Bankr. N.D. Iowa 2016) ("[b]ottom line for court, in deciding whether a Chapter 13 case should be dismissed based on Debtor's bad faith, is whether debtor is attempting to thwart his creditors or is making an honest effort to repay them to the best of his ability").

The Court finds that Lake Pointe and BFCU met their burden of proof and that Debtors filed this case in bad faith. Given the "totality of the circumstances," this

Court finds that there has been an abuse of the provisions, purposes, and spirit of chapter 13 by the Debtors and that cause exists to convert the Debtors' case.

### B. **Converting This Case Would Best Serve the Interests of Creditors**

Even though this Court has found that cause exists to convert the Debtors' case, this does not end the inquiry—the Court also finds that it would be in the best interests of the creditors and the estate to convert. Given the allegations and evidence of numerous fraudulent omissions as well as the Debtors obvious lack of candor with this Court, the Court finds that creditors and estate will be best served by the conversion of the case to chapter 7 and the appointment of a chapter 7 trustee.

Creditors are likely to recover more in a Chapter 7 case than they will under the Debtor's proposed Chapter 13 plan, which proposes to pay a minimal dividend to unsecured creditors. The Chapter 7 trustee will be able to investigate Debtors' tangled financial affairs and omissions from their bankruptcy schedules and distribute money to creditors to ensure an equitable distribution to them. See *In re Eatman*, 182 B.R. 386, 394 (Bankr. S.D.N.Y. 1995) (converting case to Chapter 7 served best interests of creditors and estate where schedules were riddled with inaccuracies and omissions, where Chapter 7 trustee can investigate the debtor's financial affairs and bring appropriate actions to recover property, and, if necessary, object to debtor's discharge where the debtor may have concealed assets).

Furthermore, as mentioned above, prior to filing their bankruptcy petition in this Court, Debtors litigated various housing discrimination and conspiracy claims in federal court against BFCU and Lake Pointe, all of which were dismissed with

prejudice by the District Court. In ¶ 107 of their Complaint filed on April 19, 2018, in the Federal Court Action, Debtors stated: "[o]n July 2, 2017, Loanstar Home Lending received the Appraisal Report prepared by Mr. Almon W. Delaune. It was his opinion (backed by 30+ pages of support documents) that the Grigsby property's market value as of that date was $950,000.00." In ¶ 131 of their Complaint, Debtor Mark Grigsby describes himself as "a man who just built a $950,000.00 home with only a $388,000.00 loan from BFCU and much less than $100,000.00 from the other secured creditors." Finally, in ¶ 135 of their Complaint Debtors allege that "Mark Grigsby is now going to be humiliated and embarrassed yet again due to the racism in this community when he files for bankruptcy just to save the home he and his wife so passionately put together…"

A court may take judicial notice of the record in prior related proceedings and draw reasonable inferences therefrom. *Gray ex rel. Rudd v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400 (5th Cir. 2004) (court may take judicial notice of actions by or in another court). See also *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957–58 (9thCir. 1989) ("It is well-settled that court documents from the underlying bankruptcy case are subject to judicial notice in related adversary proceedings and related district court litigation"). See also *U.S. v. Southern California Edison Co.*, 300 F. Supp. 2d 964 (E.D. Cal. 2004) (holding that federal courts may take judicial notice of proceedings in other courts, both within and without the federal judicial system; however such documents are noticed only for the purpose of determining

what statements are contained in the documents, and not to provide the truth of those statements).

In addition, the court may take judicial notice of matters of public record, including pleadings filed in state court. See *Joseph v. Bach & Wasserman, L.L.C.*, 487 Fed. Appx. 173, 178 (5th Cir. 2012) ("[T]he court may take judicial notice of matters of public record. Here, the document referenced is a pleading filed with a Louisiana state district court, and it is a matter of public record." (citation omitted) (citing *Funk v. Stryker Corp.*, 631 F.3d 777 (5th Cir. 2011).

Here, the Court takes judicial notice of Debtors' statements (via allegations) in a prior, related district court litigation, not for the purpose of determining the truth of those statements, but simply to determine their existence. Under these circumstances, the Court finds that it is within its discretion to take judicial notice of Debtors' statements in the aforementioned ¶¶ 107, 131 and 135 of their Complaint. Debtors' statements in ¶¶ 101 and 135 show, in no uncertain terms, that Debtors stated that the market value of their home as of July 2, 2017 was $950,000.00. Debtors' statement in ¶ 135 indicates Debtors' sole purpose in seeking bankruptcy protection was to avoid creditors such as BFCU seeking to enforce the benefit of their bargain under state law.

Notwithstanding the fact that, on April 19, 2018, Debtors represented to the federal district court that the value of their home was $950,000.00, when Debtors filed for bankruptcy in this Court, they listed on Schedule A/B the value of their home as $595,060.00. The evidence shows that Debtors have understated their home's

value in an effort to mislead this Court and their creditors. Such behavior this Court cannot abide.

If, as Debtors have asserted, their home has a market value of $950,000.00, then liquidation of that asset would garner sufficient funds to satisfy all of their secured debt ($635,036.81), general unsecured debt ($35,975.20), and would even leave enough to satisfy all of their non-dischargeable student loan debt ($61,562.00). These facts militate toward conversion of this case to a Chapter 7, so that a duly-appointed Chapter 7 trustee can set about liquidating this valuable asset for the benefit of the estate and its creditors.

Also, once this case is converted to Chapter 7, the trustee may, upon investigating the financial affairs of Debtors and determining whether they made a false oath or account in connection with this case, oppose their discharge. § 704(a)(6).

### C.    <u>Debtors' Right to Voluntarily Dismiss Case is Not Absolute</u>

Although Debtors have filed a request that this case be dismissed, their right to a dismissal under 11 U.S.C. § 1307(a) is not absolute. See *In re Jacobsen*, 609 F.3d 647, 661 (5th Cir. 2010) ("We construe § 1307(b) and (c)[18] to permit a bankruptcy court to convert a case to Chapter 7 in lieu of dismissing the case under circumstances

---

[18] Reading subsections (b) and (c) *in pari materia* leads one to the conclusion that Congress could not have intended to give a debtor an absolute right to obtain dismissal of a Chapter 13 case. *In re Gaudet*, 132 B.R. 670, 676 (D.R.I. 1991). Such a right would give the debtor unfettered power to prevent conversion under § 1307(c) by simply filing a motion to dismiss whenever conversion was requested. *Id*. For all practical purposes, that would render subsection (c) a nullity, an intent that ought not to be attributed to Congress. *Id*. The conversion provision contained in § 1307(c) operates as a limitation on the debtor's right to obtain voluntary dismissal under § 1307(b). *Id*.

where the debtor has acted in bad faith or abused the bankruptcy process"); see also, *Elliott v. Sutton*, 2012 WL 1999846 (Civil Action No. 12–514; W.D. La 2012) (Bankruptcy Court denial of debtor's motion to dismiss and *sua sponte* conversion order after determining that he filed for Chapter 13 in bad faith affirmed). As stated in *Elliott*:, "in the Fifth Circuit, a bankruptcy court may *sua sponte* convert a case to Chapter 7 based on its power to prevent an abuse of process pursuant to § 105(a)." *Id* at 4; see also, *In re Powers*, 48 B.R. 120, 121 (Bankr. M.D. La. 1985) (holding that "while a debtor's right to voluntary dismissal is otherwise absolute, it does not apply where the debtor has filed the case for an improper purpose, in bad faith, or to abuse the bankruptcy process."

The Court declines to allow Debtors to use § 1307(b) as an escape hatch through which to exit bankruptcy. Under the circumstances of this case, permitting a debtor to exit bankruptcy under § 1307(b) would render section 1307(c) motions to convert meaningless and "open up the bankruptcy courts to a myriad of potential abuses." *In re Molitor*, 76 F.3d at 218; see also *In re Zarowitz*, 36 B.R. 906, 908 (Bankr. S.D.N.Y. 1984) (holding "if it can be demonstrated that the Chapter 13 case was filed for an improper purpose, in bad faith or was otherwise filed to abuse or misuse the bankruptcy process, the bankruptcy court should deny such debtor-requested dismissal in favor of a pending motion to convert").

This holding is consistent with various other lower court decisions which find that the bankruptcy court has the inherent power to prevent abuses of the bankruptcy process. See, *e.g., Gaudet v. Kirshenbaum Inv. Co., Inc. (In re Gaudet)*,

132 B.R. 670, 674 (D.R.I. 1991) ("[t]he Bankruptcy Court need not allow itself to be used 'as a legal playground or revolving door, [for] filing and dismissing bankruptcy cases at will so as to delay, frustrate and harass legitimate creditor interests.' ... Section 105 of the Bankruptcy Code confers broad power on the Bankruptcy Court to deal with such abuses.") (citations omitted).

IV.  **Conclusion**

Based on the evidence, the Court concludes that Debtors filed their Chapter 13 petition in bad faith and that it is in the best interest of the creditors that this case be converted to one under Chapter 7 of the Bankruptcy Code.  A separate order converting the case will be entered.

###